# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

BRIAN SLUTZKIN,           )
      Petitioner,        )
                              )      No. 21 CV 50105
v.                        )      Judge Iain D. Johnston
                              )
ANDREW CIOLLI,            )
          Respondent.    )

## MEMORANDUM OPINION AND ORDER

Petitioner Brian Slutzkin has filed a habeas petition under 28 U.S.C. § 2241 seeking the restoration of good conduct time he lost as a result of a disciplinary proceeding. For the reasons that follow, his habeas petition [1] is denied.

## BACKGROUND

Mr. Slutzkin was an inmate at AUSP Thomson when he filed this habeas petition, though the underlying events occurred while he was at USP Allenwood,[1] and he is now at USP Hazelton.[2] His projected release date is May 26, 2022. *See* https://www.bop.gov/inmateloc (last visited February 3, 2022).

Mr. Slutzkin was disciplined for maintaining false names on his contact list. The original incident report stated that two names on Mr. Slutzkin's contact list were fictitious, but did not explain how staff made that determination. Petition [1] at 18. On appeal, the Northeast Regional Office expressed its "concern" that the "Incident Report is poorly written" and "does not give provide [sic] information as to how the reporting officer became aware that the names on the inmate's telephone list are fictitious." *Id.* at 13. It gave USP Allenwood 30 days, or until November 15, 2019, to issue a rewritten incident report. *Id.*

On January 9, 2020, officer J. Jenkins issued a rewritten incident report. Response [8] at 16. Lt. M. Frei delivered the rewritten report to Mr. Slutzkin the following day on January 10, 2020. *Id.* at 16, 20. According to the rewritten report, on June 23, 2019, officer Jenkins reviewed the contact list Mr. Slutzkin maintained and determined that the names given for two of the contact numbers were false. According to the incident report, officer Jenkins compared the names given by Mr. Slutzkin against records from Whitepages.com and a search of LexisNexis and discovered that the two names were false. Under the Bureau of Prisons' policy, inmates may communicate only with persons on their contact lists, and it is inmates' responsibility to maintain their list with "accurate contact information, to include legal first name; legal last name . . ."

---

[1] A habeas petition is properly filed in the district where the inmate is located at the time of filing. *Al–Marri v. Rumsfield*, 360 F.3d 707, 712 (7th Cir.2004).

[2] " . . . a prisoner's transfer from one federal facility to another during the pendency of a habeas corpus proceeding does not affect the original district court's jurisdiction." *In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021).

Bureau of Prisons Program Statement 4500.12 ("Trust Fund/Deposit Fund Manual") § 14.10(c). The incident report alleges that Mr. Slutzkin's violation of § 14.10(c) by listing false contacts constituted Prohibited Act 297 under the Inmate Discipline Program, which is the "use of a telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called." Bureau of Prisons Program Statement 5270.009 ("Inmate Discipline Program") at 48.

Disciplinary hearing officer K. Bittenbender conducted a hearing on the rewritten incident report on February 14, 2020. Response [8] at 20. Mr. Slutzkin received the staff representative he requested, recreation specialist R. Schuck. *Id.* Mr. Slutzkin requested the warden and the regional director be called as witnesses, but officer Bittenbender denied the request because neither witness would have relevant information. *Id.* at 21. Mr. Slutzkin made two statements, that he had those contacts on his list when he arrived at USP Allenwood from USP Yazoo City and no one there had complained, and that the two names at issue—Bexti Milla and Geeno Ridio—were not fictitious. *Id.* at 20. The hearing officer also considered the results of the Whitepages.com and other searches on the numbers on Mr. Slutzkin's contact list that corrections staff conducted, which revealed that the two names were fictitious. The searches also revealed that one of the numbers was a Voice Over Internet Protocol call forwarding number, which is a means of call forwarding that masks the identity of a caller. *Id.* at 21-22. Officer Bittenbender concluded that the greater weight of the evidence supported a finding that Mr. Slutzkin had committed Prohibited Act 297. *Id.* at 22. He sanctioned Mr. Slutzkin by disallowing 27 days of good conduct time, and six months' loss of phone and visit privileges. *Id.*

Mr. Slutzkin appealed, but the Central Office ultimately affirmed the disciplinary decision. Petition [1] at 16.

## ANALYSIS

Persons in the custody of the Bureau of Prisons have a liberty interest in good conduct time, and can challenge the loss of good conduct time by filing a motion for habeas relief under 28 U.S.C. § 2241. *See Jackson v . Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Although prisoners have due process rights in prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). As a result, a prisoner has received due process if each of the following requirements are met: the prisoner (1) receives written notice of the disciplinary charges at least 24 hours before a disciplinary hearing; (2) has an opportunity to be heard before an impartial decision maker; (3) is able to call witnesses and present evidence that will not be unduly hazardous to safety or correctional goals; (4) receives a written statement of the evidence relied on and the reason for the decision; and (5) receives disclosures of any exculpatory evidence. *Id.* at 564-66.

The disciplinary decision will be upheld as long as it is supported by "some evidence in the record," which is a meager standard. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends."). On habeas review, the court does not reweigh the evidence or determine credibility. *See Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Rather, the court merely looks to whether there is *any* evidence in the record

supporting the disciplinary decision. *See Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (a court can overturn a disciplinary decision only if no reasonable adjudicator could have found the inmate guilty of the offense based on the evidence presented).

A federal prisoner must exhaust his federal administrative remedies before seeking habeas relief in court, but the requirement is not jurisdictional and so is waived if not raised by the respondent. *See Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987). The respondent has not raised exhaustion as an affirmative defense, and Mr. Slutzkin received a decision from the Central Office denying his appeal, Petition [1] at 6, and so it appears he has exhausted.

In his petition, Mr. Slutzkin alleges that the respondent violated his rights to due process in four ways. The Court considers each in turn.

1. **Timeliness of Incident Report**

Mr. Slutzkin alleges that the rewritten incident report dated January 9, 2020, was untimely because the Northeast Regional Office gave USP Allenwood only until November 15, 2019, to issue it. Petition [1] at 7. In his reply brief, he further contends that he showed the Northeast Regional Office's decision including the deadline to officer Bittenbender during his disciplinary hearing, but that Officer Bittenbender "stole" it. Reply [11] at 2.

Under *Wolff*, an inmate receives due process as long as his facility gives him written notice of disciplinary charges at least 24 hours before a disciplinary hearing on those charges. *See Wolff*, 418 U.S. at 564. It is undisputed that Mr. Slutzkin had more than 24 hours between the time that Lt. Frei delivered the rewritten report on January 10, 2020, detailing the disciplinary charges against him, and when the disciplinary hearing on those charges occurred on February 14, 2020. The facility's violation of his own policies and procedures does not give rise to a due process claim as long as the facility meets the four requirements set out in *Wolff*. *See Rivero v. Roal*, No. 12 CV 132, 2013 U.S. Dist. LEXIS 155711, at *9-10 (S.D. Ill. Oct. 2, 2013) ("the regulations themselves do not create a protected liberty interest or define the procedural requirements of due process."), *Report and Recommendation adopted by* 2013 U.S. Dist. LEXIS 155295 (S. D. Ill. Oct. 30, 2013). Mr. Slutzkin received more than 24 hours' notice as required under *Wolff*, and therefore the delivery of the incident report to him later than the November 15, 2019, deadline that the Northeast Regional Office set does not establish a due process violation.

2. **Sufficiency of the Evidence**

Mr. Slutzkin alleges that his due process rights were also violated because the disciplinary charges against him were meritless, and that his staff representative was denied the ability to gather documents and other evidence that would have proved his innocence. Petition [1] at 6. In his reply brief he adds that he was denied due process because officer Bittenbender denied his request to call the warden and regional director as witnesses. Reply [11] at 7.

To comport with due process, a prison's disciplinary decision need only be supported by "some evidence." Disciplinary hearing officer Bittenbender stated that he based his decision on the evidence of Mr. Slutzkin's contact list, and the results of officer Jenkins' search of

Whitepages.com and LexisNexis revealing that two of the names on Mr. Slutzkin's list were fictitious and one of the numbers was a call forwarding service. Mr. Slutzkin contends the search results were unworthy of any evidentiary weight because Whitepages.com does not include cell phone numbers, and that his two contacts have never filed a lawsuit or been arrested and so their numbers would not be in LexisNexis. He also notes that the numbers had been on his approved contact list for years before he was disciplined. But on habeas review of a disciplinary decision, a court does not reweigh the evidence or determine credibility. *See Meeks*, 81 F.3d at 720. Moreover, according to the incident report, officer Jenkins searched the Accurint database, which according to LexisNexis is a "Real Time" database of "both cellular and land line carrier records," rather than just a database of numbers of only persons sued or arrested. *See* https://risk.lexisnexis.com/products/accurint-for-law-enforcement (last visited February 3, 2022).

Mr. Slutzkin argues that § 14.10(c) of the Trust Fund/Deposit Fund Manual requires a legal name only for persons to whom an inmate sends money. Petition [1] at 11, Reply [11] at 8. But Mr. Slutzkin's argument is at odds with the language of the Manual:

> Inmates may only communicate with approved persons on their contact lists for the purpose of postal mail, TRUFONE, Public Messaging, and/or any person to whom they want to send funds. It is the inmate's responsibility to maintain his/her own list with accurate contact information, to include first name; last name; relationship; language; and postal address. Inmates are subject to disciplinary action for lying and/or providing false or fictitious information regarding a contact (e.g., when complete name is not used; when information is altered to hide the identity of the contact; and any/all other attempts to mislead reviewing and monitoring staff as to the true identity and contact information).

Trust Fund/Deposit Fund Manual §14.10(c). Thus, the Manual governs more than just money transfers, and also requires accurate contact information for telephone calls made over the Bureau of Prisons' TRUFONE system, short for Trust Fund Inmate Telephone System. *Id.* § 6.1.

Mr. Slutzkin also contends that his staff representative was prevented from obtaining evidence that would have been favorable to him. Although he attaches to his reply brief a list of evidence he contends he asked his staff representative to gather, such as any pictures or video of the incident, signed statements from inmates and staff, and copies of the employee conduct manual signed by the officers involved, he never identifies what that evidence would have shown, or explains how it would have undermined the disciplinary hearing officer's conclusions. As a result, the Court cannot assess whether any of this evidence was exculpatory or even relevant. *See Rasheed-Bey v. Duckworth*, 969 F.3d 357, 361 (7th Cir. 1992) (inmate entitled to exculpatory evidence unless disclosure would threaten institutional concerns). He also never identifies what information the warden and regional officer would have provided had they testified, or explains how it would have been relevant. *See Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002) (due process does not entitled a prisoner to "call witnesses whose testimony would be irrelevant, repetitive, or unnecessary.").

He is unable to establish a due process violation for the additional reason that under *Wolff*, a prisoner is entitled to a staff representative only if he is illiterate or his case is complex.

*See Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992). Mr. Slutzkin is not illiterate as demonstrated by his briefs, and his case is not complex because it merely involves the identity of persons he included on his contact list. He contends in his reply brief that his case is complex because he was unable to gather documents on his own before his hearing because he was in the Special Housing Unit. Reply [11] at 7. But, as noted above, he never explains the relevance of any of the evidence he was unable to gather or how it would have made a difference to the outcome of his disciplinary proceeding. Thus, Mr. Slutzkin was not entitled to a staff representative, and so any inability to meet with one or have one gather evidence at his direction did not violate his due process rights.

Because the disciplinary decision was supported by some evidence, and because Mr. Slutzkin has not identified the relevance of evidence he contends he was kept from presenting, he has not established any violation of his due process rights. The Court also notes that arguments first raised in a reply brief, such as his argument that he was not allowed to call his two witnesses, are dirty pool and forfeited. *See Narducci v. Moore*, 572 F. 3d 313, 324 (7th Cir. 2009).

## 3.    Bias of Decision Maker

Next, Mr. Slutzkin contends that disciplinary hearing officer Bittenbender was biased against him because officer Bittenbender knew the disciplinary report was written in bad faith yet disciplined him anyway, and because officer Bittenbender had already filled in the sanctions he would impose before the hearing even began. Petition [1] at 6, 11. To establish a due process violation based on bias, Mr. Slutzkin must show that his decision-maker was somehow involved in the underlying incident or its investigation. *See Temple v. Davis*, 84 Fed. Appx. 642, 644 (7th Cir. 2003). Mr. Slutzkin does not contend that Officer Bittenbender was involved in the underlying incident or participated in the investigation, but rather that he imposed discipline even though he knew the allegations to be meritless. As discussed above, officer Bittenbender identified the evidence that he based his decision upon, and that evidence supported his disciplinary decision. Mr. Slutzkin's contention that officer Bittenbender pre-judged his case even before considering the evidence against him because the officer had already filled in the sanctions to be imposed is sheer speculation. The hearing that resulted in Mr. Slutzkin's loss of good conduct time was his second: the Northeast Regional Office had set aside the original proceedings because the original incident report was not well written. The sanctions imposed after the original and second hearings were the same, and so it is unsurprising that officer Bittenbender would have had in front of him a document with those sanctions spelled out. Mr. Slutzkin's speculation does not overcome the presumption of honesty and integrity afforded hearing officers who were uninvolved in the events underlying the disciplinary report or its investigation. *See Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003).

## 4.    Excessive Sanctions

Finally, Mr. Slutzkin contends that the sanctions imposed were excessive for two reasons. First, he contends the loss of good conduct time was excessive because the prison should have just blocked the two phone numbers until he could show they were valid. Petition [1] at 6. But under the Inmate Discipline Program, the sanctions available for the violation of a 200-level

prohibited act include up to 27 days "of good conduct time credit available for year." Inmate Discipline Program at 49. Mr. Slutzkin's sanctions fall within that limit.

Second, he contends that the Inmate Discipline Program does not permit the taking of "SGT & GCT days away prior to the year of alleged infraction." Petition [1] at 6. As best as the Court can tell, Mr. Slutzkin contends that he could not lose more good conduct time during a single year than he can earn that year. But under the statute that provides for good conduct time credits, 18 U.S.C. § 3624(b)(2), "credit awarded under this subsection . . . shall vest on the date the prisoner is released from custody." Accordingly, a prisoner's good conduct time "may be revoked at any time before the date of [his] release." *Pepper v. United States*, 562 U.S. 476, 501 n.14 (2011).

## CONCLUSION

For the reasons given, Mr. Slutzkin's petition [1] is denied, and this case is closed. The motion to expedite judgment [12] is denied as moot. Mr. Slutzkin is advised that this is a final decision ending his case in this Court. If he wants to appeal, he must file a notice of appeal with this Court within 60 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Mr. Slutzkin need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

Date: February 3, 2022          By: _____

Iain D. Johnston
United States District Judge